STATE PROPERTY — TRADE FOR EQUAL VALUE The State of Oklahoma may lawfully trade all or part of the properties enumerated and as authorized by House Bill 1318 enacted by the First Session of the 1973 Legislature. Such property may be traded in whole or in part for property of substantially equal value considering the actual market value of the property. The Attorney General has received your request for an opinion wherein you ask the following two questions: "1. May the State of Oklahoma exchange presently owned property located within the innerdispersal loop of downtown Tulsa as authorized by HB 1318 enacted in 1973? "2. If such exchange is authorized, may the State of Oklahoma receive land in exchange having at least a value equal to the `market value' of the land offered in exchange by the State without violating the prohibitions or restrictions of the statutes governing urban renewal projects in Oklahoma ?" Your first question asks, in essence, whether House Bill 1318, Section 4, now codified as 70 O.S. 4422 [70-4422] (1971), is lawful and effective to allow the State Board of Regents for Higher Education to trade all or part of the subject property. Title 70 O.S. 4422 [70-4422] (1972) provides as follows: "It is the intent of the Oklahoma Legislature to make the best use of all assets and properties owned by the State Board of Regents for Higher Education; therefore, the Oklahoma Legislature authorizes and directs the State Board of Regents for Higher Education to trade all or part of any properties now owned in Tulsa County within the innerdispersal loop for any suitable site in northeast Tulsa, to facilitate a proper and expeditious development of the multi-campus concept for a junior college program." The State of Oklahoma acquired title to all of Blocks Ninety-One (91) and Ninety-Two (92), ORIGINAL TOWN of Tulsa and the former alleys in said Blocks 91 and 92 by special warranty deed in October, 1971. Said property is within the Downtown Urban Renewal Project area under the control of the Tulsa Urban Renewal Authority. This land was thus donated to the State of Oklahoma for the purposes of providing land for Tulsa Junior College. This property is expensive and valuable, but the Tulsa Urban Renewal Authority appraisal of the land was at a greatly reduced figure because of the particular public purpose for which the land was to be used. The appraisal thus was not reflective of the value of the land on the open market, but was only the appraised value at the rate commensurate with use only for public institution or college purposes. Article V, Section 36
of the Oklahoma Constitution provides as follows: "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." Under this Section the Legislature has the authority to determine when it is in the best interest of the State of Oklahoma to dispose of any property which it owns. Although the legislative authority to pass a section similar to that contained in House Bill 1318 has not been found to have been directly contested by this writer, a similar provision was considered by the Supreme Court of Oklahoma in the case of Blakeney v. Lafayette, 95 Okl. 282, 219 P. 292. The circumstances in that case were very similar to those present here. The land involved was that which had been previously donated to the State of Oklahoma and which was authorized to be sold or traded at the discretion of the State Board of Affairs. The legislative authority was not questioned. The issue in that case was whether said Act was valid 31 months after it was passed to authorize the Board to actually convey the property. The Supreme Court indicated no time limitation was in the Act and none was required under Oklahoma law and upheld the transfer and issued a writ of mandamus to the Board to transfer the property in that case. Thus, your first question is answered in the affirmative in that the State Board of Regents for Higher Education may lawfully exchange the above property which is that property referred to as being within the innerdispersal loop of downtown Tulsa. Your second question relates to the restrictions of the Tulsa Urban Renewal Authority on conveyance of properties sold by it as it might inhibit the trading of any or all of the properties in question. As stated above, this property was acquired by Tulsa Urban Renewal within its project area and subsequently conveyed to the State of Oklahoma for the purposes of establishing a junior college. The Tulsa Urban Renewal Authority Statutes must now be examined to determine the possible conflict in re-selling or trading this property. Title 11 O.S. 1614 [11-1614](c) (1971) provides as follows: "(c) Purchasers or lessees of real property in an urban renewal area, and their successors and assignees shall be obligated to devote such real property only to the uses specified in the urban renewal plan, and may be obligated to comply with such other requirements as the Urban Renewal Authority or the local governing body may determine to be in the public interest, including but not limited to the obligation to begin and complete within a reasonable time any improvements on such real property required by the urban renewal plan. The Urban Renewal Authority or incorporated city may require an appropriate performance bond to insure compliance with such requirements." Subsection (d) of said Section provides in part as follows: "(d) . . . The Urban Renewal Authority in any instrument of conveyance to a private purchaser or lessee or the incorporated city in any instrument of conveyance to a Redevelopment Corporation may provide that such purchaser or lessee shall be without power to sell, lease or otherwise transfer the real property without prior written consent until such purchaser or lessee has completed the construction of any or all improvements which such purchaser has obligated himself to construct thereon. . . ." The purpose of these statutes is to prevent persons purchasing property in an urban renewal project area from speculating on the land values and selling the same prior to building the improvements agreed upon. These statutes would undoubtedly not be binding upon the State of Oklahoma insofar as the Tulsa Urban Renewal Authority was created under the authority of the State Legislature as provided in 11 O.S. 1601 [11-1601] (1971) et seq. This entity could not restrict its creator or sovereign in its sovereign capacity and secondly the State of Oklahoma is not such a purchaser as is contemplated by these statutes as one which might speculate in land values. Nevertheless, this issue need not be directly decided. An examination of the deed of conveyance from the Tulsa Urban Renewal Authority to the State of Oklahoma mentioned above contains no restrictions as to alienation as is allowed under Section 1614(d) quoted above. Therefore, there are no restrictions of law or by deed by which the State is inhibited from disposing of its property as in its best judgment as reflected by the Legislature it sees fit. Related to this problem was an additional one of the market value mentioned above which the Urban Renewal Authority assigned to this property when it conveyed the same to the State of Oklahoma, that market value being much less than the actual market value on the open market. The State of Oklahoma is authorized to trade this property in whole or in part and must do so for property of substantially equal value. Article X, Section 15 of the Oklahoma Constitution provides as follows: "The credit of the State shall not be given, pledged, or loaned to any individual, company, corporation, or association, municipality, or political subdivision of the State; nor shall the State become an owner or stockholder in, nor make donation by gift, subscription to stock, by tax, or otherwise, to any company, association, or corporation." This Section, in essence, prohibits the State of Oklahoma from making a gift of any of its property. As to what constitutes a gift, the Supreme Court of Oklahoma went to some length to discuss this problem in the case of Hawks v. Bland, 156 Okl. 48, 9 P.2d 720. One of the definitions quoted with approval by the Court as to what constitutes a gift is as follows: "A gift, within the meaning of this section, is a gratuitous transfer of the property of the state voluntarily and without consideration." The Supreme Court of Oklahoma again considered the problem of a gift in the case of Murrow Indian Orphans Home v. Childers,197 Okl. 249, 171 P.2d 600. The Court in discussing a contract between the State and the orphans home to care for some of the State's needy children, stated in part as follows: "The matter of the wisdom of the terms of these contracts is for the Legislature and the agency upon which it thrusts the performance of its commands, and so long as they involve the element of substantial return to the state and do not amount to a gift, donation, or appropriation to the institution having no relevancy to the affairs of the state, there is no constitutional provision offended." Therefore, the State, in trading this property, must not do so in such a manner as to constitute a gift and thus be in violation of the Oklahoma constitutional provision above quoted. The Supreme Court has not had occasion to consider the exact circumstances in this case. However, the Court of Chancery of New Jersey had under consideration a similar problem in the case of Wilentz v. Hendrwkson, 33 A.2d 366. The Court stated in part as follows: ". . . That a conveyance of state-owned land for a grossly inadequate consideration would clearly be in contravention of the Constitution . . . prohibiting the donation to individuals or corporations of any of the lands belonging to the state." Thus, the State of Oklahoma in considering land for which the above properties might be traded must trade for property that is substantially equivalent to the value of the property conveyed in order to avoid the inhibitions of Article X, Section 15 . It is without question the value of the land to the State of Oklahoma and not the value of the land to its previous owner which must be the determining factor in arriving at this decision. Therefore, the actual market value of this land must be taken into consideration in arriving at a trade for other lands which must be of substantially equal value. Your second question is then answered as follows. The statutes governing the Tulsa Urban Renewal Authority and its power to restrict conveyance of properties sold by it to redevelopers were not intended nor do they apply to the State of Oklahoma. Indeed, they could not inhibit the sovereignty of the State of Oklahoma. Secondly, these powers were not attempted to be imposed upon the State of Oklahoma as no restrictions on conveyancing were contained in the special warranty deed to the State of Oklahoma. The State of Oklahoma must use the actual market value of the property and must trade any or part of said property for land that is at least substantially equal in value to that owned and being traded by the State of Oklahoma. It is, therefore, the opinion of the Attorney General that your questions be answered as follows. The State of Oklahoma may lawfully trade all or part of the properties enumerated and as authorized by Section 4 of House Bill 1318 enacted by the First Session of the 1973 Legislature, now codified as 70 O.S. 4422 [70-4422] (1970). Such property may be traded in whole or in part for property of substantially equal value considering the actual market value of the property. (James H. Gray) ** SEE: OPINION NO. 74-139 (1974) ** ** SEE: OPINION NO. 96-058 (1996) **